FILED

2015 Jan-13  AM 09:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **SEAMLESS POLE, INC**., an Alabama Corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**MCWANE, INC**., a Delaware Corporation,<br><br>　　　　　Defendant. | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Seamless Pole, Inc., (hereinafter, "Plaintiff" or "Seamless Pole"), by and through its undersigned counsel, files this original complaint for patent infringement against Defendant McWane, Inc. (hereinafter, "McWane" or "Defendant").

## NATURE OF THE ACTION

1.　　　This is a patent infringement action to stop Defendant's infringement of United States Reissued Patent No. US RE45,329 entitled "Centrifugally Cast Pole and Method" (hereinafter, the "'329 Patent"), which is a Reissue of U.S. Patent No. 8,567,155 (hereinafter the "'155 Patent). Plaintiff is the exclusive licensee of the '329 Patent. Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

2.　　　Seamless Pole is a corporation duly organized and existing under the laws of the State of Alabama with its principal place of business in Birmingham, Alabama. Seamless Pole is engaged in the design, development, manufacture and delivery of ductile iron poles. Seamless Pole is the exclusive licensee of the '329 Patent, and possesses all rights thereto, including the

exclusive right to exclude the Defendant from making, using, selling, offering to sell or importing in this district and elsewhere into the United States the patented invention(s) of the '329 Patent, the right to sublicense the '329 Patent, and to sue the Defendant for infringement and recover past and future damages.

3.      Upon information and belief, McWane is a corporation duly organized and existing under the laws of the State of Delaware, having a place of business located at 2900 Highway 280, Suite 300, Birmingham, AL 35223.   Upon information and belief, McWane manufactures, distributes and sells centrifugally case ductile iron poles through a division called McWane Poles.

## JURISDICTION AND VENUE

4.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.   This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

5.      The Court has personal jurisdiction over Defendant because: Defendant has minimum contacts within the State of Alabama and the Northern District of Alabama; Defendant has purposefully availed itself of the privileges of conducting business in the State of Alabama and in the Northern District of Alabama; Defendant has sought protection and benefit from the laws of the State of Alabama; Defendant regularly conducts business within the State of Alabama and within the Northern District of Alabama; and Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Alabama and in the Northern District of Alabama.

6.      More specifically, Defendant, directly and/or through its intermediaries, ships, distributes, offers for sale, sells, and/or advertises its products and services in the United States,

the State of Alabama, and the Northern District of Alabama.  Upon information and belief, Defendant has committed patent infringement in the State of Alabama and in the Northern District of Alabama.  Defendant solicits customers in the State of Alabama and in the Northern District of Alabama.  Defendant has many paying customers who are residents of the State of Alabama and the Northern District of Alabama and who use Defendant's products and services in the State of Alabama and in the Northern District of Alabama.

7.      Venue is proper in the Northern District of Alabama pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## FACTUAL ALLEGATIONS

8.      Seamless Pole is engaged in the design, development, manufacture, distribution, marketing, and sale of centrifugally cast ductile iron poles.  Plaintiff's centrifugally cast ductile iron poles provide an alternative to wooden, concrete or fiberglass poles in the electric utility industry and other pole-using industries, with advantages over poles made with wood, concrete, or fiberglass, including, without limitation: a higher strength to weight ratio, resistance to corrosion and storm damage, a dimpled surface to reduce wind resistance, an 80-year life expectancy, and a modular construction.

9.      During the 1995 to 1996 time period, Tom W. Waugh, the sole inventor of the '329 Patent developed a centrifugally cast ductile iron pole, which was the first ductile iron casting product of its kind.

10.      During at least this time period, McWane and the ductile iron casting industry believed that it was not feasible to create a centrifugally cast ductile iron pole product.

## DISCUSSIONS BETWEEN SEAMLESS POLE AND MCWANE BEGAN IN 1996

11.     During 1996, McWane and Mr. Waugh, the Chief Executive Officer of Seamless Poles, entered into discussions concerning the possibility of entering into a commission agreement whereby McWane would sell and distribute, but not manufacture, centrifugally cast ductile iron pole products developed by Mr. Waugh.

## THE 1996 COMMISSION AGREEMENT WITH MCWANE

12.     On or about September 11, 1996, McWane executed a commission agreement with Mr. Waugh, whereby "McWane acknowledge[d] that "[Mr. Waugh] is the holder of an application for U.S. Patent on a ductile iron utility pole system, and that [Mr. Waugh] has the prior contacts and experience to permit the development and sale of such products to the electric utility and other pole using industries."   Commission Agreement, at p. 1 (hereinafter, the "Commission Agreement," which is attached hereto as Exhibit A).

13.     In the Commission Agreement "McWane ha[d] agreed to pay to TWW a 5% commission on sales of ductile iron utility poles . . .  for the life of any issued patents." *Id.*

14.     The Commission Agreement further acknowledged that "McWane [was] engaged in the business of manufacturing, selling, and distributing ductile iron products but ha[d] never entered the utility pole market before." *Id.*

15.     Subsequent to the execution of the Commission Agreement, McWane did not pay any commissions to Seamless Pole or Mr. Waugh.

## THE 2006 CONFIDENTIALITY AGREEMENT WITH MCWANE

16.     On July 24, 2006, "[McWane,] having some spare capacity, [wa]s desirous obtaining of new business[,] and [Seamless Pole,] being desirous of placing the manufacture of a product that is proprietary and that requires enforced strictly confidentiality of all information

pertaining to this product," entered into a Confidentiality Agreement.   Confidentiality Agreement, dated July 24, 2006, at p. 1 (hereinafter, the "2006 Confidentiality Agreement," which is attached hereto as Exhibit B).

17.     In connection with the 2006 Confidentiality Agreement, Mr. Waugh did not grant McWane a license, nor did McWane otherwise obtain permission, to make, use, offer to sell, or sell centrifugally cast ductile iron casting pole products covered by the '329 Patent.

### THE 2007 CONFIDENTIALITY AGREEMENT WITH MCWANE

18.     On May 16, 2007, Seamless Pole and Mr. Waugh entered into a Confidentiality Agreement with McWane to discuss "a potential transaction relating to, the manufacture, distribution, marketing and/or sale of certain ductile iron tapered ductile iron casting pole products (the "Products") utilizing or incorporating an existing patent [U.S. Patent No. 5,784,851] and/or [the '155 Patent] of [Mr. Waugh] in connection with production of the Products."   Confidentiality Agreement[1], at p. 1 (hereinafter, the "2007 Confidentiality Agreement," which is attached hereto as Exhibit C) (internal citations and emphasis omitted).

---

[1]     The 2007 Confidentiality Agreement was the subject of a lawsuit before the Circuit Court of Jefferson County, Alabama, between Seamless Pole and Mr. Waugh, as plaintiffs, and McWane and Michael Keel, as defendants, captioned *Tom Waugh et al. v. McWane, Inc. et al.*, No. 01-CV-2013-901820.00 (hereinafter, the "State Lawsuit," the complaint for which is attached hereto as Exhibit D and shall hereinafter be referred to as the "State Lawsuit Complaint").
   In the State Lawsuit, Seamless Pole averred, *inter alia*, that McWane used confidential information, in violation of the 2007 Confidentiality Agreement, "to create a new division of McWane, Inc., known as McWane Poles, which has made and/or continues to make ductile iron poles," and that McWane has "used this [confidential] information to form the basis of its knowledge regarding the manufacturing production process involved with ductile-iron pipes and used this information to thereafter form McWane Poles as a division of McWane, Inc., so as to wrongfully use and profit from the information provided by [Tom Waugh and Seamless Pole] and otherwise compete with them in violation of the subject [2007 Confidentiality Agreement]." State Lawsuit Complaint, at ¶13. A settlement was reached between the parties in the State Lawsuit. The settlement did not grant McWane a license, nor did McWane otherwise obtain permission, to make, use, offer to sell, or sell centrifugally cast ductile iron casting pole products covered by the '155 Patent or the '329 Patent.

19.     In connection with the 2007 Confidentiality Agreement, Mr. Waugh did not grant McWane a license, nor did McWane otherwise obtain permission, to make, use, offer to sell, or sell centrifugally cast ductile iron casting pole products covered by the '329 Patent.

## MCWANE "QUIETLY" ENTERS THE DUCTILE IRON POLE BUSINESS IN 2009

20.     Upon information and belief, in early 2009, McWane began making, using, offering to sell, and/or selling centrifugally cast ductile iron casting pole products.

21.     "[McWane Global President Michael] Keel said McWane first heard of the idea about producing ductile iron poles from people outside the company a few years ago and believes it is the first company to fully commercialize and market the product." *See* "Birmingham's McWane Inc. moves from pipes to poles," The Birmingham News, dated May 2, 2010, at p. 2 (attached hereto as Exhibit E).

22.     "[Mr.] Keel, who oversees international sales and new business development, said McWane Poles was quietly rolled out in 2009 after two years of planning and development." *Id.* at 1.

23.     McWane's centrifugally cast ductile iron casting pole products are made, used, offered for sale, and/or sold through a "new division, McWane Poles, [which] makes ductile-iron poles marketed to electric-utility companies that use wooden, concrete or fiberglass poles to hold up power lines." *Id.*

## HISTORY OF THE '329 PATENT

24.     The '155 Patent was the subject of a lawsuit before this Court between Seamless Pole as plaintiff and McWane as defendant, captioned *Seamless Pole, Inc. v. McWane, Inc.*, Civil Action No. 2:13-cv-02028-TMP (hereinafter the "'155 Lawsuit").

25.     On May 7, 2014, Seamless Pole filed Reissue Application No. 14/272,076 requesting reissue of the '155 Patent (hereinafter the "Reissue Application"), in which additional claims were proposed.

26.     On May 16, 2014, McWane filed a Petition for *Inter Partes* Review of the '155 Patent (hereinafter "IPR") in the U.S. Patent and Trademark Office (hereinafter "USPTO").

27.     As part of the IPR and in view of the cancelation of original claims 1-9 of the '155 Patent, Seamless Pole and McWane filed a joint request for an adverse judgment against Seamless Pole in the IPR (hereinafter "Joint Request") with respect to original claims 1-9 of the '155 Patent. A copy of the Joint Request is attached hereto as Exhibit F.

28.     On November 14, 2014, the USPTO issued a Notice of Allowance indicating the allowance of new claims 10-13 in the Reissue Application.

29.     The '155 Lawsuit was dismissed with prejudice with respect to the claims of the '155 Patent on December 30, 2014.

30.     The Reissue Application issued as the '329 Patent on January 13, 2015.  The '329 Patent contains four claims (claims 10-13) that are distinct from any claims in the '155 Patent.

## SEAMLESS POLE SUFFERS HARM FROM MCWANE'S INFRINGEMENT

31.     McWane is manufacturing, using, offering for sale, and/or selling centrifugally cast ductile iron casting pole products, which infringe claims 10-13 of the '329 Patent.

32.     Seamless Pole has lost and continues to lose business to McWane, in competitive bidding situations and otherwise, as a direct result of McWane's infringement of the '329 Patent.

33.     Seamless Pole actually competes with McWane in the market for ductile iron poles and would have made additional profits but for McWane's infringement.

## COUNT I

## INFRINGEMENT OF U. S. REISSUED PATENT NO. US RE45,329
## BY MCWANE, INC.

34.     Plaintiff re-alleges and incorporates by reference each of Paragraphs 1-33 above.

35.     The '329 Patent was duly and legally issued by the United States Patent and Trademark Office on January 13, 2015 after full and fair examination.  Plaintiff is the exclusive licensee of the '329 Patent, and possesses all right, title and interest in the '329 Patent including the right to enforce the '329 Patent, and the right to sue Defendant for infringement and recover past and future damages.

36.     Plaintiff is informed and believes that Defendant manufactures, distributes, uses, makes, offers for sale, sells, and/or advertises centrifugally cast ductile iron casting pole products that infringe the '329 Patent either literally or under the doctrine of equivalents.  Upon information and belief, Defendant has infringed and continues to infringe claims 10-13 of the '329 Patent by making, using, and providing centrifugally cast ductile iron casting pole products, including, without limitation, its Ductile Iron Utility Poles, that: are elongated and hollow; have a tapered outer diameter with a first and second end; the first end having a smaller outer diameter than the second end; are formed by centrifugal casting such that they have a substantially uniform wall thickness from a first location adjacent the first end to a second location adjacent the second end; have a wall thickness at the second end that is larger than the wall thickness between the first and second locations; have a running ring that extends outward from the second end; have a plurality of asymmetric pimples extending away from an outer surface of the pole; have a slip joint configured to slidably receive the first end of another pole member; and is manufactured by castable material comprised of ductile iron, cast iron, steel and/or aluminum.

37.     Upon information and belief, Defendant has intentionally induced and continues to induce infringement of claims 10-13 of the '329 Patent in this district and elsewhere in the

United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled and otherwise caused its customers to use its centrifugally cast ductile iron casting pole products, for the primary purpose of causing infringing acts by said customers. Defendant has had knowledge of the '329 Patent, at a minimum, as of the commencement of this action, and upon information and belief, continues to encourage, instruct, enable and otherwise cause its customers to use its products in a manner which infringes the '329 Patent.   Upon information and belief, Defendant has specifically intended that its customers use and install the centrifugally cast ductile iron casting pole products in such a way that infringes the '329 patent by, at minimum, providing instructions to its customers on how to use and install the centrifugally cast ductile iron casting pole products in such a way that infringes the '329 Patent and knew that its actions, including but not limited to providing such instructions, would induce, have induced, and will continue to induce infringement by its customers.

38.    Upon information and belief, Defendant has contributed to and continues to contribute to the infringement of claims 10-13 of the '329 Patent in this district and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled and otherwise caused its customers to use its centrifugally cast ductile iron casting pole products, having been provided by Defendant to its customers for the primary purpose of causing infringing acts by said customers by offering to sell, and selling (directly or through intermediaries), to its customers, its centrifugally cast ductile iron casting pole products and that its customers have utilized said centrifugally cast ductile iron casting pole products in a manner that infringes one or more claims of the '329 Patent. Defendant has had knowledge of the '329 Patent, at a minimum, as of the commencement of this lawsuit. Upon information and belief, Defendant has specifically intended and/or specifically intends that its

customers use Defendant's centrifugally cast ductile iron casting pole products in such a way that infringes the '329 Patent by, at minimum, providing its centrifugally cast ductile iron casting pole products along with instructions to its customers on how to use and install the Defendant's centrifugally cast ductile iron casting pole products in such a way that infringes the '329 Patent, and knew and/or knows that its centrifugally cast ductile iron casting pole products are especially made and/or adapted for user(s) to infringe one or more claims of the '329 Patent with the assistance and support of Defendant, and, therefore, are not staple articles or commodities of commerce suitable for a substantial non-infringing use.

39.     Defendant's aforesaid activities have been without consent, authority or license from Plaintiff.

40.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of the Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

41.     Defendant's infringement of Plaintiff's exclusive rights under the '329 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## JURY DEMAND

42.     Plaintiff demands a trial by jury on all issues.

## <u>PRAYER FOR RELIEF</u>

Plaintiff respectfully requests the Court find in its favor and against Defendant, and that Court grant the following relief:

A.      An adjudication that one or more claims of the '329 Patent have been infringed, either literally and/or under the doctrine of equivalents, by the Defendant.

B.      An adjudication that Defendant has induced infringement of one or more claims of the '329 Patent;

C.      An adjudication that Defendant has contributed to the infringement of one or more claims of the '329 Patent;

D.      An award to Plaintiff of damages adequate to compensate Plaintiff for Defendant's acts of infringement together with prejudgment interest and post-judgment interest;

E.      A grant of preliminary injunction pursuant to 35 U.S.C. § 283, enjoining the Defendant from further acts of infringement with respect to the claims of the '329 Patent.

F.      A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining the Defendant from further acts of infringement with respect to the claims of the '329 Patent.

G.      That, should Defendant's acts of infringement be found to be willful from the time that Defendant became aware of the infringing nature of its actions, that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

H.   That this Court declare this to be an exceptional case and award Plaintiff its

reasonable attorneys' fees and costs in accordance with U.S.C. § 285; and,

I.   Any further relief that this Court deems just and proper.


Dated: <u>January 13, 2015</u>                              Respectfully submitted,


                                                         <u>/s/ M. Blair Clinton</u>
                                                         M. Blair Clinton
                                                         Alabama State Bar No. ASB-1369-A51C
                                                         **HENINGER GARRISON DAVIS, LLC**
                                                         2224 First Avenue North
                                                         Birmingham, Alabama 35203
                                                         Telephone: (205) 327-9115
                                                         Facsimile: (205) 326-3332
                                                         Email: bclinton@hgdlawfirm.com

                                                         Jacqueline Knapp Burt
                                                         Georgia State Bar No. 425322
                                                         James F. McDonough, III
                                                         Georgia State Bar No. 117088
                                                         **HENINGER GARRISON DAVIS, LLC**
                                                         3621 Vinings Slope – Suite 4320
                                                         Atlanta, Georgia  30339
                                                         Telephone: (404) 996-0869
                                                         Facsimile: (205) 547-5504
                                                         Email: jburt@hgdlawfirm.com
                                                         Email: jmcdonough@hgdlawfirm.com